## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**ACCESS NOW, INC., a not-for-profit**
**Florida corporation, et al.,**

**Plaintiffs,**

**vs.**                                          **Civ. No.  09-1156 JCH/LAM**

**LIFEPOINT HOSPITALS, INC.,**
**a Tennessee corporation, et al.,**

**Defendants.**

## MEMORANDUM OPINION AND ORDER

This case is before the Court *sua sponte* after the Court raised the issue of Plaintiffs' standing to sue the Defendants and requested briefing from the parties.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) (observing that the court has an independent obligation to determine the issue of standing).  After reviewing those briefs, the Court concludes that six of the individual Plaintiffs have standing to sue five of the individual Defendants, and as a result of their standing, Plaintiff Access Now, Inc. has associational standing to sue those same five Defendants.  Two of the Plaintiffs have no standing whatsoever, and all of their claims must be dismissed.  Finally, the claims against the remaining 47 Defendants that Plaintiffs lack standing to sue will be dismissed.

## FACTS RELEVANT TO STANDING

In the original Complaint (Doc. No. 1), Plaintiffs Danielle M. Black and Judith Holbrook allege that they require the use of wheelchairs; that they have visited Memorial Medical Center in Las Cruces, New Mexico, which is owned or operated by Defendant PHC-Las Cruces, many times; that they have encountered various architectural barriers to access at that facility; and that they will

continue to go to Memorial Medical Center in the future.  In an affidavit (Ex. A to Doc. No. 80), Plaintiff Anna Sekulich avers that she resides in Tennessee and uses a wheelchair and service dog. She has been a regular patient and visitor at Defendant Southern Tennessee Medical Center, where she has encountered various architectural barriers to access at that facility, but notwithstanding those issues, she needs to return to that facility in the future.  Plaintiff Betty Ingram avers in her affidavit (Ex. B to Doc. No. 80) that she is a resident of Alabama and a member of Access Now who uses a wheelchair.  Ingram has encountered architectural barriers in her visits to Defendant Lakeland Community Hospital.  Ingram does not allege a need or intent to return to that particular hospital in the future.  Plaintiff Jan English is a resident of Tennessee who uses a wheelchair and a service dog.  In her affidavit (Ex. C to Doc. No. 80), she avers that she recently visited Defendant Athens Regional Medical Center to evaluate whether it was accessible to the disabled, as she has contemplated moving to Athens, Georgia.  English avers that she too encountered various architectural barriers to access during her visit, and that she intends to return to the facility.  Finally, Plaintiff Richard Frame avers in his affidavit (Ex. D to Doc. No. 80) that he is a resident of Texas and a member of Access Now who requires the use of a motorized wheelchair.  He recently visited Ennis Regional Medical Center, run by Defendant PRHC-Ennis, L.P., where he encountered a number of architectural barriers.  Frame does not aver that he intends to return to Ennis Regional Medical Center in the future.  However, in the Third Amended Complaint, Plaintiffs allege generally that "Plaintiffs have visited Defendants' Facilities and intend to return in the future."  Doc. No. 59 at ¶ 21.

In their Third Amended Complaint (Doc. No. 59), all Plaintiffs allege that they are members of Plaintiff organization Access Now, Inc., which is a "national advocacy organization" whose purpose is "to educate persons and businesses on accessibility issues and to ensure full participation

2

of all people with all types of disabilities in every community." *Id*. at ¶ 7.  Plaintiffs further allege that Defendant LifePoint Hospitals, Inc. is a holding company comprised of affiliated wholly owned or majority owned subsidiaries—the other 51 Defendants in the case—that own and operate hospitals and other healthcare facilities in seventeen states. *Id*. at ¶ 17.  Plaintiffs further allege, in conclusory fashion, that "Defendants have a corporate policy violative of the ADA at their Facilities, which has resulted in the violations [of the ADA]." *Id*. at ¶ 20.  Not surprisingly, Defendants deny this allegation.  Plaintiffs seek declaratory and injunctive relief, as well as attorney's fees.

      In response to the Court's request for briefing on the issue of Plaintiffs' standing to sue each of the named Defendants, Plaintiffs presented the Declaration of Eric Contreras (Ex. E to Doc. No. 80), an architect and a consultant with ADAAG Consulting Services ("ACS") in Miami, Florida. He holds an International Code Council Certification as an accessibility inspector and plans examiner, and is a contributing author on the forthcoming Healthcare Accessibility Manual, a guide to hospital design and construction.  Contreras has worked for ACS for ten years as an accessibility consultant in five hospital class actions.  He has also performed numerous public/pedestrian rights-of-way accessibility surveys of 31 LifePoint hospitals or medical facilities.  (It is not clear how many of the facilities surveyed by Contreras are the subject of this lawsuit.)  The purpose of the surveys is to document every architectural barrier at those facilities that violates the ADA Accessibility Guidelines ("ADAAG").   In addition, Contreras has rendered expert opinions on architectural barrier issues under the ADA and Fair Housing Act in a number of cases in various United States District Courts. In his Declaration, Contreras highlights "critical common elements" at the LifePoint hospitals he has studied that require access for the disabled, including *inter alia*, parking areas and paths of travel from parking areas to hospital entrances, patient and visitor drop-off points, main lobbies and waiting areas, service counters and registration areas, cafeterias and gift

3

shops, public restrooms, exam and procedure areas, patient rooms and bathrooms, emergency

departments, rehabilitation and/or physical therapy areas, and other public access areas. *Id.* at ¶ 8.

According to Contreras, his surveys of LifePoint hospitals reveal common ADA violations in these

critical common elements. *Id.* at ¶ 9. To illustrate his point, Contreras attaches reports setting forth

the results of surveys he has conducted on five LifePoint facilities in five different states. *Id.* at ¶

10. Contreras then highlights eleven categories of similar architectural barriers that exist across

LifePoint hospitals, citing examples of the violations as described in his reports. *Id.* at ¶ 11.

Contreras then concludes that

> ACS has found common ADAAG violations at LifePoint Hospitals, not only in the
> sense that they can be grouped into broad categories, but also in the sense that the
> specific violations themselves are very similar (differing only in immaterial ways).
> That is, the same types of crucial ADA violations observed in parking areas, patient
> rooms, and common areas of one LifePoint Hospital are highly similar to those found
> in other LifePoint Hospitals. These similar violations do not appear to be an accident
> or coincidence. Rather, the scope and similarity of the them suggest that
> LifePoint—company-wide—has failed to make commonly-understood, expected,
> and required alterations to bring its facilities into compliance, and has allowed very
> similar and easily-identifiable violations to continue at its facilities.

*Id.* at ¶¶ 13-14.

## DISCUSSION

## I.   APPLICABLE LAW

### A.   Standing to Sue

Federal jurisdiction is limited by Article III, § 2, of the U.S. Constitution to actual cases and

controversies. As a result, the plaintiffs' standing to sue "is the threshold question in every federal

case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498,

95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). *See also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

(1992) (whether the plaintiffs have standing is a threshold issue, one that is "an essential and

unchanging part of the case-or-controversy requirement of Article III.").  On many occasions, the Supreme Court has reiterated the three requirements that constitute the " 'irreducible constitutional minimum' " of standing. *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 771  (2000).  First, a plaintiff must demonstrate an "injury in fact," which is "concrete," "distinct and palpable," and "actual or imminent."  *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (internal quotation marks and citation omitted).  Second, a plaintiff must establish "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] some third party not before the court.' "  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992) (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976)).  Third, a plaintiff must show the " 'substantial likelihood' that the requested relief will remedy the alleged injury in fact." *Stevens, supra*, at 771, 120 S.Ct. 1858.  Thus, to demonstrate standing, a plaintiff must have "alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction."  *Horne v. Flores*, 557 U.S. 433, ----, 129 S.Ct. 2579, 2592 (2009) (internal quotation marks omitted) (emphasis in original).

Standing "cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear on the record." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (internal quotation marks and citations omitted).  "It is the burden of the party who seeks the exercise of jurisdiction in his favor clearly to allege facts demonstrating he is a proper party to invoke judicial resolution of the dispute." *Id.*  (internal quotation marks and citations omitted). A court conducting a constitutional standing inquiry is "not bound by conclusory allegations." *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994).  When considering whether a plaintiff has established standing, however, district courts may permit a plaintiff to amend its complaint or

5

consider affidavits containing particularized facts supporting standing.  *Thompson v. County of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994) (quoting *Warth*, 422 U.S. at 501, 95 S.Ct. 2197); *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 28 n.1 (D.C. Cir. 1990).

Finally, standing is claim-specific.  As a result, the fact that Plaintiffs may have standing to assert some claims against some Defendants does not necessarily give rise to standing to assert claims against all Defendants.  *See Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("Standing is not dispensed in gross."); *Rosen v. Tn. Comm'r of Fin. and Admin.*, 288 F.3d 918, 928 (6th Cir. 2002) ("It is black-letter law that standing is a claim-by-claim issue."); *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 47 n. 15 (1st Cir. 2011) (same); *James v. City of Dallas*, 254 F.3d 551, 563 (5th Cir. 2001) ("Both standing and class certification must be addressed on a claim-by-claim basis").

## B.       The Americans With Disabilities Act

Congress divided the ADA into five sections: private sector employment under Title I; public programs and activities under Title II; public accommodations under Title III; telecommunications under Title IV; and miscellaneous provisions under Title V. Americans with Disabilities Act of 1990, Pub.L. No. 101–336, 104 Stat. 327 (1990).

The provisions of Title III are at issue in this case. Title III of the ADA prohibits discrimination against disabled individuals in any place of public accommodation.  42 U.S.C. § 12182. Here, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation ...." 42 U.S.C. § 12182(a).  Liability is imposed upon "any person who owns, leases (or leases to), or operates a place of public accommodation" that discriminates against an individual on the basis of disability.  Id.  Discrimination includes the failure to remove "architectural barriers" in existing facilities where such removal is "readily achievable." 42 U.S.C.

6

§ 12182(b)(2)(A)(iv).  Where an entity can demonstrate that the removal of a barrier is not readily achievable, discrimination also includes failure to make such facilities available through alternative methods if such methods are readily available.  42 U.S.C. § 12182(b)(2)(A)(v).  However, no entity shall be required to permit disabled individuals to participate in or benefit from public accommodations where such an individual poses a direct threat to the health and safety of others.  42 U.S.C. § 12182(b)(3).

If a place of public accommodation fails to remove architectural barriers, the enforcement provisions of the ADA provides a private right of action.  42 U.S.C. § 12188(a)(1).  A private action under Title III is available to any person who is "being subjected to discrimination on the basis of disability" or who has "reasonable grounds for believing that such person is about to be subjected to discrimination...."  42 U.S.C. § 12188(a)(1).  The ADA does not require "a person with a disability to engage in a futile gesture if such [a] person has actual notice that a person or organization ... does not intend to comply" with the ADA.  Id.  Title III incorporates the remedies and procedures of Title II of the Civil Rights Act of 1964. *See* 42 U.S.C. § 12188(a)(1).  The court may order injunctive relief which includes an order to make a facility "readily accessible."  42 U.S.C. § 12188(a)(2).  Or, where appropriate, injunctive relief may include "requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods...."  Id.

## II.    THE ARGUMENTS OF THE PARTIES

In their brief, the Plaintiffs do not directly address any of the foregoing well-established requirements for establishing standing.  Instead, Plaintiffs point to cases from other federal district courts wherein those courts have concluded that individuals suing under Title III of the ADA had standing to sue more than one location of a particular business.  Plaintiffs also suggest that they need

7

not make the "futile gesture" of visiting all of the healthcare facilities listed in the Third Amended Complaint because they allege that all the facilities are subject to a single discriminatory corporate policy.

Defendants, in turn, do not contest Plaintiffs' standing to sue. Instead, Defendants repeat what they have previously stated: "Defendants believe that it is prudent and economically beneficial to defend against one class action rather than having to defend against multiple individual claims, in various jurisdictions, with possible inconsistent results."[1] Doc. No. 83 at 2. However, the parties' desire for an expedient and cost-effective procedural mechanism does not, by itself, satisfy the "irreversible constitutional minimum" requirements for standing to sue.

## III.   ANALYSIS

### A.   <u>Causation and Redressability</u>

If the plaintiff is himself the object of the action, "there is ordinarily little question that the action or inaction [of the defendant] has caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130. In this case, Plaintiffs are the object of this action. Plaintiffs have alleged a direct injury as a result of the existence of architectural barriers at medical facilities owned or operated by five of the Defendants: PHC-Las Cruces, Southern Tennessee Medical Center, Athens Regional Medical Center, Lakeland Community Hospital and Ennis Regional Medical Center. They have not demonstrated that any of the other Defendants have caused them injury by failing to adhere to ADA requirements at their

---

[1] This perhaps explains Defendants' failure to raise personal jurisdiction as a defense in this case. While this Court clearly has personal jurisdiction over Defendant PHC-Las Cruces, it is not clear that it has such jurisdiction over the other Defendants. However, as it is Defendants' prerogative to waive the personal jurisdiction defense, the Court does not address it here.

facilities.  Plaintiffs' injuries are fairly traceable to the actions or inaction of the five Defendants because said injuries occurred in public accommodations under certain Defendants' operation and control.  Accordingly, the causation element of the *Lujan* test has been satisfied as to those five Defendants only.

Plaintiffs seeks injunctive relief against Defendants for the alleged discrimination they encountered due to architectural barriers.  If successful, injunctive relief would include "an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities...."  42 U.S.C. § 12188(a)(2).  A favorable decision would clearly redress the alleged injury suffered by Plaintiffs.  Accordingly, Plaintiffs have satisfied the third prong of the *Lujan* test.

**B.**     **Injury in Fact**

The question now before the Court is whether Plaintiffs have satisfied the first prong of the *Lujan* test.  An "injury in fact," is a harm that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff must show that he or she "sustained or is immediately in danger of sustaining some direct injury as the result of the challenged . . . conduct and [that] the injury or threat of injury [is] both real and immediate. . . ."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation marks and citations omitted).  Although a plaintiff may present evidence of a past injury to establish standing for retrospective relief, he must demonstrate a continuing injury to establish standing for prospective relief.  *PETA v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir. 2002).  Courts considering ADA claims have found that plaintiffs who have encountered barriers at public accommodations prior to filing their complaints have standing to bring claims for injunctive relief if they show a plausible intention or desire to return to the place but for the barriers to access.  *See Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002); *Shotz v. Cates*, 256

F.3d 1077, 1081 (11th Cir. 2001); *Steger v. Franco, Inc.*, 228 F.3d 889 (8th Cir. 2000).  Intent to return to the place of injury "some day" is insufficient.  *Lujan*, 504 U.S. at 564, 112 S.Ct. 2130. However, in the context of Title III of the ADA, while plaintiffs need not engage in the "futile gesture" of visiting a building containing known barriers that the owner has no intention of remedying, *see* 42 U.S.C. § 12188(a)(1), they must at least prove actual knowledge of the barriers and show that they would visit the building in the imminent future but for those barriers.  *Steger*, 228 F.3d at 892.  *See also DB ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1197 (10th Cir. 2010) (observing that "named plaintiffs in a class action seeking prospective injunctive relief must demonstrate standing by establishing they are suffering a continuing injury or are under an imminent threat of being injured in the future.").

Here, there is no doubt that Plaintiffs Black and Holbrook have established that they have suffered an "injury in fact" at the hands of PHC-Las Cruces, and that their injury is continuing. They have done so by describing in their affidavits the barriers to access that they have encountered or know of at Memorial Medical Center, as well as their need and intent to return to that facility in the future.  Plaintiffs Sekulich and English have similarly established an "injury in fact" with regard to Defendants Southern Tennessee Medical Center and Athens Regional Medical Center, respectively.  The question of whether Plaintiffs Ingram and Frame have established standing to sue Defendants Lakeland Community Hospital and Ennis Regional Medical Center presents a closer question.  Both plaintiffs have presented evidence that they have endured past discrimination at these facilities, but neither avers in his or her affidavit any specific intent or need to return to the facility in the imminent future, as required to establish standing.  On the other hand, the Plaintiffs do aver generally in their Third Amended Complaint that they intend to return in the future to the facilities they have visited.  *See* Doc. No. 59 at ¶ 21.  Construing this in the light most favorable to

the Plaintiffs, the Court concludes that this allegation is sufficient to establish an "injury in fact," and therefore standing, for Ingram and Frame to sue Defendants Lakeland Community Hospital and Ennis Regional Medical Center.   However, the Court concludes that Plaintiffs have failed to demonstrate that they will suffer an "injury in fact" that is "actual or imminent, not conjectural or hypothetical" at any of the 47 remaining healthcare facilities named as Defendants in this case. *Lujan*, 504 U.S. at 564 ("Some day' intentions–without any description of concrete plans, or indeed even any speculation of when the some day will be–do not support a finding of the 'actual or imminent' injury. . . ."). Plaintiffs' failure to do so stems from their failure to demonstrate that they have been to any of those facilities or that they intend or wish to visit them in the future. This requirement has been uniformly applied by courts considering the question of standing in similar ADA accessibility cases.

For example, in *Small v. General Nutrition Companies, Inc.*, 388 F. Supp. 2d 83 (E.D.N.Y. 2005), the plaintiffs sued on behalf of themselves and other wheelchair users alleging that various features of many of the defendant's 55 stores in New York City were not sufficiently accessible to the disabled.  Small alleged that, due to an architectural barrier, he could not enter the GNC store nearest his home, that he regularly traveled in the immediate vicinity of several other GNC stores, and that he had purchased items from GNC stores with no barriers to entry.  He further alleged that he would continue to purchase products from GNC stores "along his usual routes of travel." *Id*. at 88.  The issue was whether Small had standing to sue all 55 stores identified in his complaint.  The court concluded that Small had standing to sue only with regard to the single store located near his home. *Id*. at 90.  As for the others, the plaintiff had failed to allege sufficient facts to establish that he had visited them in the past or would visit any of them in the imminent future, and therefore the court refused to find standing with respect to those stores. *Id*. at 89. "To make such a showing,

11

plaintiff would have to establish something more than a general desire to patronize GNC stores."
*Id*. The court also reasoned that "while proximity is relevant to the determination of a plaintiff's intent to return to an accommodation in the future, it is insufficient, on its own, to establish Title III's requirements for injunctive relief or the 'actual knowledge' and 'intent to return' requirements of Title III's futile gesture clause." *Id*.

Many of the cases cited by Plaintiffs offer no justification to support a contrary decision. For example, Plaintiffs rely on *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034 (9th Cir. 2008) for the proposition that courts should take a broad view of standing in civil rights cases. However, Plaintiffs read *Doran* too broadly. In that case, the plaintiff sued a convenience store for violation of the ADA's accessibility requirements. The plaintiff alleged that the store contained barriers that denied him full and equal access, that he had personally encountered barriers at the store, and that the barriers deterred him from visiting the store. The defendant argued that plaintiff lacked standing to recover for accessibility violations of which he was not personally aware. First, the court held that plaintiff had suffered an injury that was concrete and particularized because he alleged in his amended complaint that he personally suffered discrimination as a result of the barriers in place during his visits to the store and that those barriers have deterred him on at least four occasions from returning. The court further concluded that the plaintiff had suffered an actual and imminent injury because he alleged that he had visited the store on ten to twenty prior occasions, that he is currently deterred from visiting the store because of its accessibility barriers, that the store is conveniently located near his favorite fast food restaurant, and that he plans to visit the area at least once a year. That is in stark contrast to this case, where the Plaintiffs have not demonstrated an imminent harm to them flowing from alleged ADA violations at the other 47 Defendants' facilities. Thus, *Doran* supports the conclusion that the Plaintiffs in this case have standing to sue Defendants PHC-Las

Cruces, Southern Tennessee Medical Center, Lakeland Community Hospital, Athens Regional Medical Center, and PRHC-Ennis, L.P. because they have personally encountered barriers to access at those facilities, and they have an intent to return in the future.  *Doran* says no more than this.  *See also Parr v. L & L Drive-Inn Restaurant*, 96 F. Supp. 2d 1065 (D. Haw. 2000) (concluding that plaintiff had standing to sue restaurant that was one of seven in a chain of restaurants, after plaintiff demonstrated that he had been to the restaurant in the past, restaurant was reasonably close by and along his bus route, and therefore circumstances indicated that he was likely to return in the future). Thus, the rationales of *Doran* and *Parr* do not support the conclusion that the Plaintiffs in this case have standing to sue the remaining 47 Defendants in this case, as they have failed to demonstrate that they are likely to go to any of those facilities in the near future.

Next, Plaintiffs rely upon the unpublished district court decision in *Celano v. Marriott Int'l Inc.*, 2008 WL 239306 (N.D. Cal. Jan. 28, 2008).  In that case, disabled golfers sought a declaratory judgment that Marriott violated the ADA by failing to provide accessible golf carts at its 26 golf courses nationwide.  Marriott, in turn, argued that the plaintiffs lacked standing because they had not visited all 26 Marriott golf courses and were not personally knowledgeable of all the alleged barriers they might face at those courses.  The court found that the plaintiffs did know that they would face barriers to access at all Marriott golf courses because Marriott had told them that it would not provide accessible golf carts at any of them.  The court further concluded that all three plaintiffs had standing to bring their ADA claim as to all 26 Marriott golf-courses nationwide because it was unnecessary that the plaintiffs actually visit each course to have been deterred from playing there.  *Id*. at *7.  Instead, the plaintiffs demonstrated that they had tried to golf at Marriott courses but could not because of the lack of accessible carts, and that they regularly played golf on non-Marriott courses where accessible carts were available.  *Id*.  Finally, the court reasoned, "*all*

*three plaintiffs indicate a sufficient interest to play on Marriott courses nationwide*," but cannot because of Marriott's corporate policy, and therefore "future injury is also imminent." *Id.*(emphasis added). Again, *Celano* is distinguishable from this case. Here, each of the plaintiffs who have submitted affidavits has indicated an interest in returning to only one particular hospital facility; none of them has indicated a need, interest or intent to patronize any of the other 47 medical facilities named as defendants in this case. As a result, they have failed to establish the existence of an "actual or imminent" harm to them flowing from any ADA violations at those facilities.

This Court declines to adopt the rationale in *Park v. Ralph's Grocery Co.*, 254 F.R.D. 112, 119 (C.D. Cal. 2008), another decision from a California district court cited by Plaintiffs. In *Park*, the plaintiffs sued a chain of grocery stores under the ADA. In that case, as here, the plaintiffs had actual notice of ADA violations at locations they had never visited by virtue of the inspections conducted by their hired expert. *Id.* at 116. The defendant argued that the plaintiffs lacked standing because they could not demonstrate that they had suffered an injury in fact, and specifically could not show that they were likely to return to patronize any of its stores. *Id.* at 118. The defendant contended that plaintiff Park's prior visits to nine of its stores, which he made for the purpose of checking for ADA violations, were insufficient to confer standing. Finally, defendant argued that the plaintiffs lacked standing as to the 90 stores that they had never visited because they could not establish an intent to return to those stores. *Id.* Plaintiffs admitted that the Ralph's stores near their homes were ADA compliant, and that they had to travel 15 to 60 miles from their homes to encounter stores that were inaccessible. The *Park* court concluded that plaintiffs had standing to sue, pointing out that "to establish standing, and ADA plaintiff can demonstrate a real and immediate threat of future injury by showing an intent to return to the accommodation." *Id.* at 119 (internal citation and quotation omitted). In a decision that appears out of step with *Lujan* and other

14

cases on standing, the court held that plaintiffs are not required to show an intent to visit every store listed in their complaint, and that it was enough that plaintiffs lived in "reasonable proximity" to several of defendant's inaccessible stores, have patronized other stores in the past, have definite plans to return, and travel near *some* of the stores that are in violation of the ADA.  *Id*.  However, this Court concludes that the decision in *Park* is out of step with the majority of decisions cited herein, including that of the Supreme Court in *Lujan*, that require a plaintiff to demonstrate his intent to go to the public accommodation in question in order to establish that his injury, and therefore his right to injunctive relief, is "actual or imminent, not conjectural or hypothetical."

Plaintiffs hope to sidestep their duty to show imminent injury at the remaining 47 Defendants' facilities through the conclusory allegation that "Defendants have a corporate policy violative of the ADA at their Facilities, which has resulted in the violations . . ."  Doc. No. 59 at ¶ 20.  Plaintiffs do not allege any facts describing the contents, nature, scope, or duration of the alleged policy—they merely allege its existence.  However, Plaintiffs support their allegation with the Contreras affidavit discussed above, in which he describes the surveys he has completed at various LifePoint facilities and the conclusions he has drawn regarding the similarities in ADA violations at those buildings.   Contreras concludes that the scope and similarities in ADA violations at LifePoint facilities demonstrates a corporate policy, to wit, "that LifePoint—company wide—has failed to make commonly understood, expected, and required alterations to bring its facilities into compliance . . ."   The existence of such an alleged policy, argue Plaintiffs, dispenses of the need for them to demonstrate that they have been to each of the Defendant facilities and the requirement that they show their intent to return in the future.

Plaintiffs rely upon *Clark v. Burger King Corp.*, 255 F. Supp. 2d 334 (D.N.J. 2003), in support of their position.  In *Clark*, the plaintiff sought an injunction requiring Burger King and all

of its franchises to bring thousands of restaurants in the United States into compliance with the ADA's accessibility requirements.  The court concluded that plaintiff had standing with regard to those restaurants he had patronized in the past and which were within a reasonable distance of his home, as he had a reasonable likelihood of future injury at those locations sufficient to demonstrate an "injury in fact."  As for the locations Clark had never visited, the court concluded he had no standing to sue "absent any allegation that there exists (1) particular commonality of construction, or (2) that BKC implements a corporate policy violative of the ADA at Burger King restaurants . . ." *Id*. at 343.  As Clark had not made any such allegations, he lacked standing to sue.  In this regard, *Clark* is similar to the reasoning in *Celano v. Marriott*, 2008 WL 239306 (N.D. Cal. 2008), *supra*, in which the court held that the plaintiffs could sue Marriott golf courses they had never visited because Marriott had informed them of its corporate policy to not provide accessible golf carts.

Plaintiffs' reliance upon *Clark* fails, however, for the same reason discussed above—they have failed to demonstrate a need or intent to return to the remaining 47 Defendants' facilities in the future.  As the decisions in both *Clark* and *Celano* illustrate, the existence of a corporate policy violative of the ADA does not eliminate the requirement that a plaintiff demonstrate that he is immediately in danger of sustaining some direct injury at the facility in question.  As a result, the court in *Clark* concluded that even had he shown the existence of a corporate policy, Clark still lacked standing as to places he had yet to visit because he did not "demonstrate an intent to return to, or a likelihood of future injury at, locations he has yet to visit . . ." *Clark*, 255 F. Supp. 2d at 343. *See also Equal Rights Center v. Hilton Hotels Corp.*, 2009 WL 6067336 (D.D.C. March 25, 2009) (narrowing group of hotels that plaintiffs had standing to sue to those for which they "claimed a specific and imminent desire to return"); and *Celano*, 2008 WL239306 *7 (N.D. Cal. Jan. 28, 2008)

(finding standing "[g]iven the fact that the three plaintiffs have demonstrated a sufficient desire to play on Marriott courses" in the future).  As such a showing is absent here as to the remaining 47 Defendants, Plaintiffs lack standing to sue those Defendants.

### C.    Associational Standing of Access Now

"The Supreme Court's 'standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, . . . and prudential standing which embodies "judicially self-imposed limits on the exercise of federal jurisdiction."'" *Wilderness Soc'y v. Kane Cnty.*, 632 F.3d 1162, 1168 (10th Cir. 2011) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11, (2004).  "The prudential standing doctrine encompasses various limitations, including the general prohibition on a litigant's raising another person's legal rights." *Id.* (internal citation omitted).

An organization may attempt to assert standing on its own behalf.  *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n. 19 (1982). When asserting standing on its own behalf, an organization must be able to demonstrate some injury to the association itself that meets the constitutional standing requirements as well as the prudential limitations on standing, unless Congress evinced a clear intent to eliminate those prudential limitations under the statute in question.  *See id.* at 378-79, 102 S.Ct. 1114.  As the *Havens* Court stated, courts conduct the same inquiry with respect to an organizational plaintiff as with an individual plaintiff: has it "alleged such a personal stake in the outcome of the controversy as to warrant [ ] invocation of federal-court jurisdiction."  *Id.* (internal quotation marks and citations omitted).

However, even in the absence of injury to itself, an association may have standing solely as the representative of its members.  *Warth v. Seldin*, 422 U.S. at 511.  In order to demonstrate

17

"associational" standing, the association

> must allege that its members, or any one of them, are suffering immediate or
> threatened injury as a result of the challenged action of the sort that would make out
> a justiciable case had the members themselves brought suit. . . . So long as this can
> be established, and so long as the nature of the claim and of the relief sought does not
> make the individual participation of each injured party indispensable to proper
> resolution of the cause, the association may be an appropriate representative of its
> members, entitled to invoke the court's jurisdiction.

*Id.  See also Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977).

(an association has standing when: (1) its members would otherwise have standing to sue in their

own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3)

neither the claim asserted nor the relief requested requires the participation of individual members

in the lawsuit).

In this case, neither Plaintiffs nor Defendants have addressed the standing of Plaintiff Access

Now, Inc.  Certainly, Access Now has not come forward with any evidence to support an argument

that it is entitled to assert independent organizational standing.  However, as discussed above,

Plaintiffs have demonstrated that six members of Access Now—Plaintiffs Black, English, Frame,

Holbrook, Ingram and Sekulich—have standing in their own right to sue five of the Defendants.

Further, in its Third Amended Complaint Access Now alleged that it is a national advocacy

organization with the purpose of "ensur[ing] full participation of all people with all types of

disabilities in every community," including places of public accommodation.  Doc. No. 59 at ¶ 7.

Thus, the Court concludes that by suing under Title II of the ADA to rectify barriers to access for

the disabled, the interests that Access Now seeks to protect are germane to the organization's

purpose.  Finally, neither the claim asserted nor the relief requested requires the participation of

individual members in the lawsuit—although this point is moot, as several individual members of

Access Now are in fact participating as plaintiffs in the lawsuit. In any event, the Court concludes

Access Now has associational standing to sue Defendants PHC-Las Cruces, Southern Tennessee Medical Center, Athens Regional Medical Center, Lakeland Community Hospital and Ennis Regional Medical Center.

### D.   Effect of Motion for Class Certification

Finally, Plaintiffs suggest that the requirement to demonstrate their standing to sue all the Defendants is met as long as the court concludes that they have also satisfied the "commonality" requirement for class certification under Rule 23.  As support for their position, Plaintiffs rely upon the unpublished decision in *Lucas v. Kmart Corp.*, 2005 WL1648182 at *3 (D. Colo. 2005), in which the court declined to consider the issue of plaintiffs' standing to sue on the grounds that the standing analysis was "subsumed by" its finding that the Rule 23(a) prerequisites had been satisfied. The *Lucas* court cited no authority for this approach.

On the other hand, federal courts have long held that standing to sue is a threshold issue that must be decided before class certification.  *See, e.g., Sutton v. St. Jude Med. S.C., Inc.,* 419 F.3d 568, 570  (6th Cir. 2005) ("The Article III standing requirements apply equally to class actions.  The class representative must allege an individual, personal injury in order to seek relief on behalf of himself or any other member of the class."); *Murray v. U.S. Bank Trust Nat. Ass'n*, 365 F.3d 1284, 1288 n.7 (11th Cir. 2004) ("[I]t is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim.") (citing *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987)); *Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. 1981) (stating that the "constitutional threshold [of standing] must be met before any consideration of the typicality of claims or commonality of issues required for procedural

19

reasons by Fed. R. Civ. P. 23."); *Lee v. Oregon*, 107 F.3d 1382, 1390 (9th Cir. 1997) (concluding

that if the named plaintiff fails to establish standing, "he may not seek relief on behalf of himself

or any other member of the class."); *In re Franklin Mut. Funds Fee Litigation,* 388 F. Supp. 2d 451,

460 (D.N.J. 2005) ("Standing is a threshold inquiry, not a mere hurdle that can be cleared with the

assistance of Rule 23.").  Thus, the Court declines Plaintiffs' invitation to subsume the threshold

question of Plaintiffs' Article III standing to sue within the analysis of Plaintiffs' request for class

certification.

## <u>CONCLUSION</u>

The Court concludes that Plaintiffs Deborah Herold and Ann Howell have not established

standing to sue any Defendant, and therefore all of their claims will be dismissed.  Plaintiffs Black,

English, Frame, Holbrook, Ingram, and Sekulich have established their standing to sue Defendants

PHC-Las Cruces, Inc.; Southern Tennessee Medical Center, LLC; Athens Regional Medical Center,

LLC; Lakeland Community Hospital, LLC; and PRHC-Ennis, L.P.  Similarly, Plaintiff Access Now

has associational standing to sue these five Defendants that is co-extensive with that of its Plaintiff

members.  Finally, all of Plaintiffs' claims against the remaining 47 Defendants[2] will be dismissed

---

[2] These 47 Defendants include LifePoint Hospitals, Inc., Ashley Valley Medical Center, LLC, Bourbon Community Hospital, LLC, Castleview Hospital, LLC, Clinch Valley Medical Center, Inc., Community Hospital of Andalusia, Inc., Crocket Hospital, LLC, Danville Regional Medical Center, LLC, Dodge City Healthcare Group, LP, Georgetown Community Hospital, LLC, Havasu Regional Medical Center, LLC, Hillside Hospital, LLC, Kentucky Hospital, LLC, Lake Cumberland Regional Hospital, LLC, Lander Valley Medical Center, LLC, Livingston Regional Hospital, LLC, Logan General Hospital, LLC, Logan Memorial Hospital, LLC, Meadowview Regional Medical Center, LLC, Mexia Principal Healthcare Limited Partnership, Northwest Medical Center -- Winfield, LLC, PHC-Cleveland, Inc., PHC-Elko, Inc., PHC-Eunice, Inc., PHC-Fort Mohave, Inc., PHC-Fort Morgan, Inc., PHC-Los Alamos, Inc., PHC-Martinsville, Inc., PHC-Minden, LP, PHC-Morgan City, LP, Palestine Principal Healthcare Limited Partnership, Pinelake Regional Hospital, LLC, Putnam Community Medical Center,

for lack of standing.

**IT IS SO ORDERED.**


_____
**UNITED STATES DISTRICT JUDGE**

------

LLC, Raleigh General Hospital, LLC, River Parishes Hospital, LLC, Riverton Memorial Hospital, LLC, Riverview Regional Medical Center, LLC, Rockdale Medical Center, LLC, Russellville Hospital, Inc., Smith County Memorial Hospital, LLC, Spring View Hospital, LLC, Sumner Regional Medical Center, LLC, Trousdale Medical Center, LLC, Vaughan Regional Medical Center, LLC, Ville Plate Medical Center, LLC, Woodford Hospital, LLC, Wythe County Community Hospital, LLC.