## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**ACCESS NOW, INC., a not-for-profit**
**Florida corporation, DANIELLE M. BLACK,**
**JAN ENGLISH, RICHARD FRAME,**
**JUDITH HOLBROOK, BETTY INGRAM,**
**and ANNA SEKULICH,**

                **Plaintiffs,**

**vs.**                                  **Civ. No.  09-1156 JCH/LAM**

**PHC-LAS CRUCES, INC., a New Mexico**
**Corporation; ATHENS REGIONAL MEDICAL**
**CENTER, LLC, a Delaware limited liability**
**company; LAKELAND COMMUNITY**
**HOSPITAL, LLC, a Delaware limited liability**
**company; PRHC-ENNIS, L.P., a Texas limited**
**partnership; and SOUTHERN TENNESSEE**
**MEDICAL CENTER, LLC, a Delaware limited**
**liability company,**

                **Defendants.**[1]

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Plaintiffs' Renewed Motion for Class Certification* [Doc. No. 69].   Into their brief, Plaintiffs incorporate their original *Plaintiffs' Motion for Class Certification* [Doc. No. 36], which the Court provisionally denied with leave for the Plaintiffs to refile after they amended their complaint to add dozens of Defendants to the lawsuit.  In addition to considering both motions for class certification filed by Plaintiffs (and the supporting exhibits), the Court has also considered both responses by the Defendants.  After considering these papers, as well as the applicable authorities, the Court concludes that the motion should be granted in part. Plaintiffs have asked for certification of a nationwide class that has suffered disability discrimination

---

[1] This revised caption reflects the Court's previous ruling on standing.

at the hands of 51 Defendants.  However, as Plaintiffs lack standing to sue most of those Defendants,

the Court will certify a class action against only the five Defendants remaining in the case.

## FACTS

The Court has previously set forth the facts of this case in both its Order entered November

21, 2011 [Doc. No. 75] and its Memorandum Opinion and Order regarding standing entered

contemporaneously with this Memorandum Opinion and Order.

In their motions and in their Third Amended Complaint, Plaintiffs ask the Court to certify

a class defined as:

> all people in the United States with physical disabilities as that term
> has been defined by 42 U.S.C. § 12102(2), including those persons
> that have a physical impairment that substantially limit a major life
> function, such as mobility, hearing, and sight, who have and who
> were, prior to the filing of the Class Action Complaint, denied the full
> and equal enjoyment of the goods, services, programs, facilities,
> privileges, advantages, or accommodations of any of the Defendants'
> Facilities, because of their respective disabilities.

When Plaintiffs filed their renewed motion for class certification, they had sued not only LifePoint

Hospitals, Inc., but also 51 individual corporate entities operating heathcare facilities around the

nation.  Now, in light of this Court's ruling regarding standing, there are six remaining individual

Plaintiffs, plus corporate Plaintiff Access Now, Inc., who have standing to sue five Defendants.  As

a result, if the Court were to certify a class, it would apply only to  Defendants PHC-Las Cruces,

Inc., Athens Regional Medical Center, LLC, Lakeland Community Hospital, LLC, PRHC-Ennis,

L.P., and Southern Tennessee Medical Center, LLC, and the class definition would be modified

accordingly.  Thus, Plaintiffs' motion to certify class must be viewed through this narrower lens.

Once again, as with the standing issue, the Defendants do not oppose class certification.

Defendants state that in order to save time and money, they would prefer to litigate all of the claims

2

against all of their facilities at the same time.

## DISCUSSION

## I.   APPLICABLE LAW

" 'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.' " *Shook v. El Paso County*, 386 F.3d 963, 971 (10th Cir. 2004) ("*Shook I*") (quoting *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982)).   A district court may certify a class if the proposed class satisfies the requirements of Rule 23(a) and the requirements of one of the types of classes in Rule 23(b).   The party seeking class certification bears the burden of proving Rule 23's requirements are satisfied. *Shook I*, 386 F.3d at 968. "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).   While the court should not pass judgment on the merits of the case at the class certification stage, it must conduct its own " 'rigorous analysis,' " to ensure Rule 23's requirements are met. *Vallario v. Vandehey*, 554 F.3d 1259, 1266-67 (10th Cir. 2009) (quoting *Shook I*, 386 F.3d at 968); *see also Shook v. Board of County Commissioners*, 543 F.3d 597, 612 (10th Cir. 2008) ("*Shook II*").   "Frequently, that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim.   That cannot be helped." *Dukes*, 131 S.Ct. at 2551.

Rule 23(a) requires numerosity of class members, commonality of at least one question of fact or law among the class, typicality of named plaintiffs' claims or defenses to the class's claims or defenses, and adequacy of the named plaintiffs and their attorneys as class representatives. Fed. R. Civ. P. 23(a)(1)-(4).   The Court addresses each requirement in turn, beginning with numerosity.

3

A.    **Numerosity**

Rule 23(a)(1) requires that the class membership be sufficiently large to warrant a class action because the alternative of joinder is impracticable. Some courts have held that numerosity may be presumed at a certain number; the United States Court of Appeals for the Tenth Circuit, however, "has never adopted such a presumption." *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006). The Tenth Circuit has stated that there is "no set formula" to determine whether the numerosity requirement is met; instead, it is a fact-specific inquiry best left to the district court's discretion. *Rex v. Owens*, 585 F.2d 432, 436 (10th Cir. 1978). *Cf. Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 624 (5th Cir. 1999) (finding that proposed class consisting of "100 to 150 members . . . is within the range that generally satisfies the numerosity requirement"). In determining whether a proposed class meets the numerosity requirement, "the exact number of potential members need not be shown," and a court "may make 'common sense assumptions' to support a finding that joinder would be impracticable." *Neiberger v. Hawkins*, 208 F.R.D. 301, 313 (D. Colo. 2002) (citation omitted). *See Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 n.1 (6th Cir. 1997) (noting that rule 23(a)(1) is not a "'strict numerical test'"; holding, however, that, where class comprises over 1,100 persons, suggestion that joinder is not impractical is "frivolous") (citation omitted); *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) ("[T]he difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable." (citing 1 Herbert B. Newberg, Newberg on Class Actions § 3.05, at 141-42 (2d ed. 1985))). "Satisfaction of the numerosity requirement does not require that joinder is impossible, but only that plaintiff will suffer a strong litigational hardship or inconvenience if joinder is required." *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378, 384 (D. Colo. 1993). *See Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993) ("Impracticable does not mean impossible."). A number of factors are relevant in determining

4

whether joinder is impracticable, including the class size, the geographic diversity of class members, and the relative ease or difficulty in identifying members of the class for joinder. *Pueblo of Zuni v. United States*, 243 F.R.D. 436, 444 (D.N.M. 2007) (Johnson, J.).

Here, Plaintiffs have presented evidence as to the numerosity of their proposed class. They cite statistics showing that as of 2000, there were 49.7 million Americans with long-lasting disabilities, with over 10 million of them residing in the seventeen states where all the original Defendants' facilities are located. Of course, this Court has concluded that Plaintiffs have standing to sue only five Defendants in four[2] states—Alabama, New Mexico, Tennessee, and Texas, which further reduces the number of disabled persons eligible for the class. Plaintiffs point out that "in most cases the LifePoint Facility is often the only hospital in the community it serves." Doc. No. 36 at 16. Next, Plaintiffs point out that the putative class includes disabled persons who are denied full access to Defendants' facilities through the pendency of this lawsuit, further increasing the number of eligible members. *Id*. at 17. Finally, they point out that the putative class is geographically diverse and that the class members are difficult to identify. *Id*. at 18.

The Court concludes that the Plaintiffs have successfully demonstrated that the putative class would be too numerous to warrant joinder of individual members. Given the numbers of disabled persons in the United States and in the states where Defendants are located, common sense dictates that *each* of Defendant's facilities has probably, at a conservative estimate, served hundreds of disabled persons who were denied full access to that facility as a result of their disabilities. At the

---

[2] According to data presented by Plaintiffs, as of 2000: (1) Alabama had a population of over 2 million, of which almost 16% had a physical or sensory disability; (2) New Mexico had a population of over 1.6 million, of which 13.5% had a physical or sensory disability; (3) Tennessee had a population of 5.2 million, of which 15.1% had a physical or sensory disability; and (4) Texas had a population of 18.7 million, of which 11.1% had a physical or sensory disability.

same time, the class members are geographically diverse in that they are spread out in at least four states, and their identities will be difficult to ascertain.  Thus, the numerosity requirement is satisfied.

### B.    Commonality

"Commonality" requires a plaintiff to show that "there are questions of law or fact common to the class." Rule 23(a)(2).  In *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011), a case in which plaintiffs attempted to certify a nationwide class of female store employees who had suffered sex discrimination, the Supreme Court stated, "[t]hat language is easy to misread, since any competently crafted class complaint literally raises common 'questions.'"  *Id*. at 2551. Rather, "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Id*. (internal citations and quotations omitted).  "This does not mean merely that they have all suffered a violation of the same provision of law." *Id*.  Rather, the Court explained:

> Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Id*.  Thus, the Supreme Court focused on "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  *Id*. (citing Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009).  A finding of commonality requires only a single question of law or fact common to the entire class. *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999)

In *Dukes*, the Court concluded that proof of commonality necessarily overlapped with the

6

plaintiffs' claim on the merits, which was that Wal-Mart engaged in a pattern or practice of discrimination.  *Id*. at 2552.  That is similar to this case, in which Plaintiffs allege that the Defendants, who are affiliated corporate entities operating hospitals and heathcare facilities, have a corporate policy of discriminating against the disabled in violation of Title III of the  Americans With Disabilities Act ("ADA").  Plaintiffs do not allege precisely what that policy is, though one can infer from their allegations that the policy is one of disregard of barriers to access for the disabled.  However, there are differences between the cases as well.  In *Dukes*, the plaintiffs sued regarding "literally millions of employment decisions," *id*., and as to each decision not to promote, hire, or grant a pay raise, the central issue was the supervisor's motivation.  If the employment decision was based on the employee's sex, it violated Title VII.  "Without some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*."  *Id.*  (emphasis in original).

This case is somewhat different because the reasons for the alleged architectural barriers at Defendants' facilities are almost irrelevant.  Here, the Plaintiffs are suing regarding hundreds or even thousands of architectural barriers to access (ranging from too few parking spaces, to ramps that are too steep, to doorways that are too narrow, to pipes that are left uncovered, etc.) at various facilities.  The question here is not whether any of the Defendants intended to discriminate against the disabled or why they have not fixed barriers to access for the disabled, but simply rather whether or not illegal architectural barriers exist at their facilities.  *See Doe v. Oklahoma City Univ.*, 406 Fed. Appx. 248, 252 (10th Cir. 2010) ("A claim for injunctive relief under Title III of the ADA, however, is not dependent upon a showing of discriminatory intent.") (citing *Lentini v. Cal. Ctr. for the Arts*, 370 F.3d 837, 846 (9th Cir. 2004) ("It is undisputed that a plaintiff need not show

intentional discrimination in order to make out a violation of [Title III of] the ADA.").  Unlike *Dukes*, here there are no discretionary, subjective decisions to be scrutinized as to each plaintiff.  Rather, if barriers to access do exist at their facilities, Defendants are liable and must repair them (within the limits of the statute), regardless of Defendants' motivations.

Here, Plaintiffs identify the common questions as whether LifePoint Hospitals, Inc. has a corporate policy violative of the ADA that has led it to fail to correct known ADA violations, and whether as a result of such policy there are architectural barriers to access at facilities owned or operated by subsidiaries that are wholly or partially owned by LifePoint.  Through the Affidavit of Eric Contreras (attached as Ex. E to Doc. No. 80), Plaintiffs have brought forth evidence that the same or similar architectural barriers occur at many of LifePoint's affiliated facilities.  Thus, the putative class members will have encountered many of the same types of barriers.  Finally, it appears that a single injunction as to each facility would bring relief to the entire class.  Based on the foregoing, the Court concludes that Plaintiffs have sufficiently shown common questions of law and fact to satisfy the commonality requirement.  Despite differences from hospital to hospital, the alleged accessibility barriers affect the disabled class members in the same way.  Thus, the Court concludes that the requirement of commonality is satisfied.

**C.    Typicality**

Rule 23(a)(3) requires the claims of Named Plaintiffs to be typical of the claims of the class they seek to represent. The interests and claims of Named Plaintiffs and class members need not be identical to satisfy typicality. *Anderson v. City of Albuquerque*, 690 F.2d 796, 800 (10th Cir. 1982). Provided the claims of Named Plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality. *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988).

On one hand, Plaintiffs—all of whom have mobility impairments—have attempted to seek relief through a class action for alleged ADA violations involving hearing impairment, accommodations for the blind and possibly other disabilities.  However, it is not necessary that the named plaintiffs' injuries be identical to those of all other class members, just that the unnamed class members suffer injuries similar to those of the named plaintiffs "and that the injuries result from the same, injurious course of conduct."  *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001), *abrogated on other grounds, Johnson v. California*, 543 U.S. 499, 504–05, 125 S.Ct. 1141, 160 L.Ed.2d 949 (2005).  That is the case here, and therefore the Court concludes the element of typicality is satisfied.

## D.   <u>Adequacy</u>

Rule 23(a)(4) requires that "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This requirement protects the due-process interests of unnamed class members, who are bound by any judgment in the action. *See Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 379 n.5 (1996) (characterizing adequacy of representation as a constitutional requirement); *Lile v. Simmons*, 143 F. Supp. 2d 1267, 1277 (D. Kan. 2001) ("Due process requires that the Court 'stringently' apply the competent representation requirement because class members are bound by the judgment (unless they opt out), even though they may not actually be aware of the proceedings.").  "The requirement of fair and adequate representation is perhaps the most important of the criteria for class certification set forth in Rule 23(a) . . . ." *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch.*, 455 F. Supp. 2d 1286, 1294 (D.N.M. 2006) (Armijo, J.). *See also Cobb v. Avon Prods., Inc.*, 71 F.R.D. 652, 654 (W.D. Pa. 1976)("Adequacy of the representative is of monumental importance since representation demands undiluted loyalty to the class interests . . . .").  The Tenth Circuit has identified two questions relevant to the adequacy of

9

representation inquiry: (i) whether the named plaintiffs and their counsel have any conflicts with other class members; and (ii) will the named plaintiffs and their counsel vigorously prosecute the action on behalf of the class. *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002). In considering this second question, the experience and competence of the attorney representing the class may inform the court's analysis. *See Lopez v. City of Santa Fe*, 206 F.R.D. 285, 289-90 (D.N.M. 2002).

Here, the five remaining individual Plaintiffs have common interests with the proposed class. Each alleges that he or she experienced discrimination at one of the five remaining Defendant's facilities as a result of impermissible architectural barriers. The organizational Plaintiff, Access Now, has a long history of advocacy for the disabled. Thus, Plaintiffs' claims are typical of those of the proposed class, and as such, they will directly benefit from a favorable resolution of the claims of the proposed class. Finally, there is no evidence that the Plaintiffs have any conflicts with other class members. The typicality of the Plaintiffs' claims and the community of interest presented by the common questions of law and fact support a finding that they will adequately represent the proposed class.

Moreover, the Plaintiffs have vigorously prosecuted the interests of the proposed class through their chosen counsel and their work with them in this case. The Plaintiffs have engaged qualified, experienced, and capable attorneys for this type of litigation. Their counsel have many years of experience in similar class action litigation regarding the rights of the disabled, and they are well equipped to prosecute the action vigorously on behalf of the class. Thus, the Court finds that the Plaintiffs and their chosen counsel are adequate representatives who will vigorously prosecute the action on behalf of the class. The adequacy requirement is satisfied.

E.      **Rule 23(b)**

        In addition to satisfying Rule 23(a)'s requirements, the class must also meet the requirements

of one of the types of classes described in subsection (b) of Rule 23. Named Plaintiffs in this case

seek to certify a Rule 23(b)(2) type of class, i.e., they assert Defendants have "acted or refused to

act on grounds that apply generally to the class, so that final injunctive relief or corresponding

declaratory relief is appropriate for the class as a whole." Fed. R. Civ. P. 23(b)(2).  As the Tenth

Circuit explained in *Shook v. Board of County Commissioners*, 543 F.3d 597 (10th Cir. 2008), Rule

23(b)(2) "imposes two independent, but related requirements" upon those seeking class certification.

*Shook II*, 543 F.3d at 604.  First, plaintiffs must demonstrate defendants' actions or inactions are

"based on grounds generally applicable to all class members." *Id*.  Second, plaintiffs must also

establish the injunctive relief they have requested is "appropriate for the class as a whole." *Id*.

(emphasis in original).  Together these requirements demand "cohesiveness among class members

with respect to their injuries...." *Id*.  This cohesiveness, in turn, has two elements. First, plaintiffs

must illustrate the class is "sufficiently cohesive that any classwide injunctive relief" satisfies Rule

65(d)'s requirement that every injunction " 'state its terms specifically; and describe in reasonable

detail . . . the act or acts restrained or required.' " *Id*. (quoting Fed. R. Civ. P. 65(d)).  Second,

cohesiveness also requires that class members' injuries are "sufficiently similar" that they can be

remedied in a single injunction without differentiating between class members. *Id*. Rule 23(b)(2)'s

bottom line, therefore, demands at the class certification stage plaintiffs describe in reasonably

particular detail the injunctive relief they seek "such that the district court can at least 'conceive of

an injunction that would satisfy [Rule 65(d)'s] requirements,' as well as the requirements of Rule

23(b)(2)." *Id*. at 605 (quoting *Monreal v. Potter*, 367 F.3d 1224, 1236 (10th Cir. 2004)).

        The Plaintiffs seek class certification under rule 23(b)(2).  They allege that the Defendants

11

have a policy and practice of failing to correct barriers to access for the disabled in violation of the ADA. Thus, the Plaintiffs seek an injunction ordering the Defendants to comply with the accessibility requirements for public accommodations under the ADA.  The requested injunction would remedy the Defendants' conduct on grounds generally applicable to the class, and the harm suffered by class members is sufficiently similar to be remedied in a single class action.  There would be no need for injunctions that differentiate among members of the Plaintiff class. Accordingly, the Court finds the requested "injunctive relief . . . is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

**IT IS THEREFORE ORDERED** that is **GRANTED IN PART**.  An Order of Class Certification in accordance with Rule 23(c) will be entered separately.

**UNITED STATES DISTRICT JUDGE**